# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

2004 OCT -1 PM 3:16

| | |
|---|---|
| **STEINAR HUANG,**<br>22750 Shaker Boulevard<br>Shaker Heights, Ohio 44122-2656,<br><br>Plaintiff,<br><br>v.<br><br>**ALLIANCE GROUP SERVICES, INC.,**<br>Attention: Legal Department<br>1221 Post Road East<br>Westport, CT 06855,<br><br>Defendant. | Case No. 1:04CV1997<br><br>Judge _____<br><br>Magistrate _____<br><br>**COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 258, *et seq.*, AND COMMON LAW FRAUD AND DECEIT**<br><br>(Jury Demand Endorsed Hereon) |

NOW COMES Plaintiff, Steinar Huang, by and through counsel undersigned, and hereby alleges:

## THE PARTIES

1. Plaintiff, Steinar Huang, had his long distance telephone carrier switched by Defendant without Plaintiff's consent. Plaintiff is a resident of Cuyahoga County, Ohio.

2. Defendant, Alliance Group Services, Inc., is a Connecticut corporation, and at all times relevant maintained its central offices in Westport, Connecticut, and has regularly engaged in business in Cuyahoga County, Ohio, which conduct has given rise to this lawsuit.

1

## JURISDICTION AND VENUE

3. Plaintiff's claim states a cause of action arising under the laws of the United States and therefore the federal district court has jurisdiction over this federal question lawsuit pursuant to Art. III, Section 2, of the U.S. Constitution.

4. Venue is proper in this Court since Defendant has engaged in business within the territorial jurisdiction of this Court, which business has given rise to Plaintiff's complaint.

## FACTUAL ALLEGATIONS

5. "Slamming" is the illegal practice of changing a consumer's telephone service – local, intralata, or interlata – (including state to state, instate and international long distance) – without permission. (Said definition is stated by the Federal Communications Commission ("FCC").).

6. Plaintiff had his long distance telephone service slammed by Defendant without his consent and Plaintiff incurred excessive long distance charges as a result.

7. Defendant is in the business of providing a communications platform whereby Defendant has symbiotic relationships with telecommunications carriers.

8. Through Defendant's communications platform, Defendant has the capacity and switches consumers' long distance telephone carriers for a fee.

9. The business of switching consumers' long distance telephone carriers for a fee is regulated by the FCC, and 47 CFR § 64.1120, *et seq*.

10. It is illegal for consumers' telecommunications services to be switched without obtaining the express consent of the consumers.

2

11. Upon information and belief, Defendant routinely engages in the business of switching consumers' telecommunications services without obtaining proper consent.

12. Upon information and belief, Defendant falsifies consumers' consent so as to create a false appearance that a consumer consented to a telecommunications carrier switch, when in reality, the consumer never provided any consent.

13. Upon information and belief, Defendant switches consumers' telecommunications carriers without consent, or with falsified consent, in order to earn handsome profits from the fees involved with switching consumers' telecommunications carriers.

14. Upon information and belief, Defendant engages in the practice of slamming consumers to reap illegal profits.

15. Defendant reaped illegal profits by virtue of slamming Plaintiff, and caused Plaintiff to pay more for his long distance service than Plaintiff ever agreed or consented to pay.

16. Defendant's retention of the ill-gotten profits reaped from slamming Plaintiff is improper.

17. Plaintiff is entitled to the return of money received by Defendant in connection with the slamming of Plaintiff.

18. Plaintiff is entitled to damages against Defendant for Defendant's illegal slamming of Plaintiff's long distance telecommunications carrier.

11. Upon information and belief, Defendant routinely engages in the business of switching consumers' telecommunications services without obtaining proper consent.

12. Upon information and belief, Defendant falsifies consumers' consent so as to create a false appearance that a consumer consented to a telecommunications carrier switch, when in reality, the consumer never provided any consent.

13. Upon information and belief, Defendant switches consumers' telecommunications carriers without consent, or with falsified consent, in order to earn handsome profits from the fees involved with switching consumers' telecommunications carriers.

14. Upon information and belief, Defendant engages in the practice of slamming consumers to reap illegal profits.

15. Defendant reaped illegal profits by virtue of slamming Plaintiff, and caused Plaintiff to pay more for his long distance service than Plaintiff ever agreed or consented to pay.

16. Defendant's retention of the ill-gotten profits reaped from slamming Plaintiff is improper.

17. Plaintiff is entitled to the return of money received by Defendant in connection with the slamming of Plaintiff.

18. Plaintiff is entitled to damages against Defendant for Defendant's illegal slamming of Plaintiff's long distance telecommunications carrier.

## FIRST CLAIM
*(Violations Of 47 U.S.C. § 258, et seq.)*

19. Plaintiff restates and incorporates each and every allegation of this complaint as if fully re-written herein.

20. 47 U.S.C. § 258(a) states, in pertinent part: "no telecommunications carrier shall submit or execute a change in a subscriber's selection of a provider of telephone exchange service or telephone toll service except in accordance with such verification procedures as the Commission shall prescribe."

21. The FCC has prescribed, among other things, via 47 CFR Ch. 1 (10-1-02 Edition), § 64.1120(a), that: "(1) no submitting carrier shall submit a change on the behalf of a subscriber in the subscriber's selection of provider of telecommunications service prior to obtaining: (i) authorization from the subscriber, and (ii) verification of that authorization in accordance with the procedures prescribed in this section. The submitting carrier shall maintain and preserve records of verification of subscriber authorization for a minimum period of two years after obtaining such verification."

22. Defendant is a submitting carrier.

23. Plaintiff is a subscriber.

24. Long distance carriers are providers of telecommunications services.

25. Defendant has submitted changes on behalf of Plaintiff's selection of Plaintiff's telecommunication provider without obtaining authorization from Plaintiff.

26. Defendant has submitted changes on behalf of Plaintiff's selection of Plaintiff's telecommunication provider without verifying Plaintiff's

4

authorization in accordance with the procedures set forth in 47 CFR Ch. 1 (10-1-02 Edition), § 64.1120 *et seq.*

27. As a direct and proximate result of Defendant's submission of changes on behalf of Plaintiff's selection of Plaintiff's telecommunication provider without obtaining authorization from Plaintiff, Plaintiff has suffered injuries and damages.

28. As a direct and proximate result of Defendant's changing of Plaintiff's selection of Plaintiff's telecommunication provider without verifying Plaintiff's authorization in accordance with the procedures set forth in 47 CFR Ch. 1 (10-1-02 Edition), § 64.1120 *et seq.*, Plaintiff has suffered injuries and damages.

## SECOND CLAIM
### *(Damages Under 47 U.S.C. § 207, et seq.)*

29. Plaintiff restates and incorporates each and every allegation of this complaint as if fully re-written herein.

30. 47 U.S.C. § 207 states, in pertinent part: "any person claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this Act, in any district court in the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."

31. Plaintiff has been damaged by Defendant's violation of 47 U.S.C. § 258.

32. Plaintiff has not pursued remedies with the FCC.

## **THIRD CLAIM**
*(Common Law Fraud And Deceit)*

33. Plaintiff restates and incorporates each and every allegation of this complaint as if fully re-written herein.

34. During Defendant's slamming of Plaintiff's telecommunication provider, Defendant and their agents knowingly made numerous misrepresentations, which included Defendant's willful act of producing a falsified voice authorization that Defendant misrepresented was the authorization of Plaintiff.

35. Defendant's authorization tape that Defendant purports is Plaintiff's wife's voice is a fraud and a sham because in reality the voice on the authorization tape is not Plaintiff's wife's voice.

36. During Defendant's slamming of Plaintiff, Defendant also omitted material information necessary to render the representations not misleading. Defendant did not state that the supposed authorization tape was actually someone other than Plaintiff's wife.

37. The misrepresentations and omissions were material in that they greatly distorted the authorization of Plaintiff to have his telecommunication carrier switched. As such, Plaintiff's decision would have been entirely different had Plaintiff been aware of such misrepresentations and omissions – Plaintiff did not desire to have Plaintiff's telecommunication carrier switched.

38. Defendant knew the voice authorization was false because they knew that Plaintiff's wife never provided authorization to have their telecommunication carrier switched.

39. Defendant made the material misrepresentations and omissions intending that Plaintiff rely on those representations, and thereby pay Defendant fees for the telecommunication services.

40. Plaintiff reasonably relied upon Defendant's representations, and was entirely unaware of the misrepresentations, omissions, and falsified voice authorizations.

41. Plaintiff reasonably believed Defendant's representations were truthful, and reasonably relied on Defendant's representations, believing that Defendant had not slammed Plaintiff's telecommunication carrier.

42. Plaintiff's reliance was foreseeable and reasonable. Plaintiff had no idea that Defendant would slam Plaintiff's telecommunication carrier.

43. Plaintiff was directly and proximately damaged by Defendant's fraudulent misrepresentations and omissions in that Plaintiff was billed for telecommunication services at a rate and by a provider that Plaintiff never consented.

WHEREFORE, Plaintiff makes the following prayer for relief:

WHEREFORE, Plaintiff prays for judgment in Plaintiff's favor for Plaintiff's 47 U.S.C. §258 claim, and Plaintiff request damages to be awarded to Plaintiff and against Defendant pursuant to 47 U.S.C. § 207, in an amount to be later ascertained at trial that is above and beyond the jurisdictional minimum, and Plaintiff further requests judgment in Plaintiff's favor and against Defendant on Plaintiff's common law fraud and deceit claim, in an amount to be later ascertained at trial that is above

7

and beyond the jurisdictional minimum, together with compensatory and punitive damages, attorney fees and costs, prejudgment and postjudgment interests, and for any other relief in law or equity that this honorable Court deems just and appropriate.

Plaintiff further requests a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

**TIMOTHY A. SHIMKO & ASSOCIATES**

*[signature]*

**TIMOTHY A. SHIMKO (0006736)**
**DAVID A. WELLING (0075934)**
*Timothy A. Shimko & Assoc., Co., LPA*
925 Euclid Avenue
2010 Huntington Bldg., 20th Floor
Cleveland, Ohio 44115
Tel: (216) 241-8300
Fax: (216) 241-2702
Email: tas@shimkolaw.com

COUNSEL FOR PLAINTIFF